UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| JESSICA COOPER o/b/o SONDRA M. COOPER | * | CIVIL ACTION NO.  09-1232 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

Background & Procedural History

Sondra M. Cooper (also sometimes known as Sondra Odenbaugh) protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on April 10, 2003.  (Tr. 152-154, 694-697).[1]  She alleged disability since August 1, 2002, because of heart problems.  (Tr. 200).[2]  The claims were denied at the initial stage of the administrative process.  (Tr. 63, 103-106, 698).  Thereafter, Cooper requested and received a September 24, 2004, hearing before an Administrative Law Judge ("ALJ").  (Tr.

---

[1] Cooper filed prior applications on November 10, 1999, but they were denied by the state agency on February 22, 2000.  (Tr. 58, 98-102, 144-146, 690-693).

[2] She later alleged severe depression, joint pain, fatigue, suicidal thoughts, and hepatitis. (Tr. 247, 265).

701-741). However, in a February 11, 2005, written decision, the ALJ determined that Cooper was not disabled under the Act. (Tr. 64-74). Accordingly, Cooper appealed the adverse decision to the Appeals Council. On January 6, 2006, the Appeals Council granted Cooper's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 116-119). The Appeals Council noted that on September 13, 2004, Cooper had filed new applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments. *See* Tr. 75-76, 169-171.[3] The Appeals Council's action rendered the subsequent applications duplicate; therefore, it directed the ALJ to associate the two sets of claims upon remand. *Id*.

Upon remand, a new hearing was held on October 16, 2006, before a different ALJ. (Tr. 742-763). Tragically, however, Cooper was killed by gunshot wound on December 2, 2006. (Tr. 19, 187). Nonetheless, in a January 22, 2007, written decision, the ALJ again determined that Cooper was not disabled under the Act. (Tr. 78-92). On June 10, 2008, however, the Appeals Council again assumed jurisdiction, vacated the ALJ's decision, and remanded the case for further consideration. (Tr. 137-140).

On August 26, 2008, Cooper's daughter, Jessica Cooper substituted as a claimant on behalf of her deceased mother. (Tr. 143). On September 29, 2008, the ALJ held a third hearing in the matter. (Tr. 764-777). In a November 18, 2008, written decision, the ALJ determined that Cooper was not disabled during the relevant period, finding at Step Four of the sequential evaluation process that she was able to return to her past relevant work as a medical secretary and admit clerk. (Tr. 15-29). Jessica Cooper again petitioned the Appeals Council to review the unfavorable decision. This time, however, the Appeals Council denied Cooper's request for

---

[3] The state agency denied the applications initially and upon reconsideration. (Tr. 75-77, 120-122, 126-127, 699-700B).

review; thus the ALJ's decision became the final decision of the Commissioner.  (May 28, 2009, Notice of Appeals Council Action, Tr. 10-12).

On July 24, 2009, Jessica Cooper sought review before this court.  She challenges the ALJ's residual functional capacity assessment, as follows,

(1) the ALJ's assessment of the claimant's left and dominant upper extremity is not supported by substantial evidence;

(2) the ALJ's failure to consider the opinion of Dr. Caroline Battles does not comport with relevant legal standards; and

(3) the ALJ's credibility determination is not supported by substantial evidence and does not comport with relevant legal standards.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

>   (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Cooper did not engage in substantial gainful activity during the relevant period. (Tr. 21). At Step Two, he found that Moore suffers severe impairments of history of Adams-Stoke-Morgagni syndrome (syncope due to high-degree AV block) with permanent dual chamber pacemaker implantation; cervical disc disease; ulnar nerve neuritis, left elbow; and depression. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 23).

### II. Residual Functional Capacity

The ALJ determined that during the relevant period, Cooper retained the residual functional capacity to perform light work,[4] reduced by the inability to reach overhead with the

---

[4] Light work entails:
   . . . lifting no more than 20 pounds at a time with frequent lifting or

left upper (dominant) extremity, and with no more than occasional climbing, balancing, kneeling, crouching, crawling, or stooping. (Tr. 24-25). She could perform other manipulative activities on at least a frequent (i.e. from one-third to two-thirds of the time), cumulative, but not on a consecutive basis. *Id*. She also experienced a moderate limitation in the ability to maintain attention and concentration for extended periods. *Id*.

In so deciding, the ALJ stated that he accorded significant weight to the opinion of Robert Holladay, M.D., an orthopedic surgeon. (Tr. 27). The ALJ further remarked that the opinion of consultative examiner, C.R. Magness, M.D., was generally consistent with Dr. Holladay's report. *Id*. Plaintiff questions the sufficiency of the ALJ's residual functional capacity assessment because she contends that he failed to include the specific limitations recognized by the consultative examiners.[5]

According to the administrative record, Cooper was examined by three consultative physicians during her applications' lengthy administrative process. David Hebert, M.D.,

---

carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[5] Plaintiff does not appear to challenge the ALJ's resolution of the limitations imposed by her mental impairment. In any event, it is apparent that the ALJ did the best that he could with the limited record evidence regarding her mental impairment. Also, a non-examining agency psychologist, Tom Ray, Ph.D. did not complete a psychiatric review technique form because Cooper failed to attend two scheduled consultative examinations with an internist. (Tr. 576-589). Under the regulations, a claimant's failure, without good cause, to attend a consultative examination may support a finding that the claimant is not disabled. *See* 20 C.F.R. § 404.1518.

administered the first examination on June 11, 2003. (Tr. 339-342). At that time, Cooper acknowledged one to two syncopal episodes per year which she blamed on low blood sugar. *Id.* She smoked one pack of cigarettes per day. *Id.* Her gait and station were completely normal. *Id.* She did not become short of breath upon walking two minutes in the office. *Id.* All joints exhibited a full range of motion. *Id.* Hebert diagnosed symptomatic bradycardia, well treated with a pacemaker; history of migraine headache, which may be responsible for syncope; suspected reactive hypoglycemia; rare syncopal episodes that occur 1-2 times per year; and no evidence of significant cardiac disease. *Id.* Medically, Hebert discerned no reason why Cooper could not perform routine walking, sitting, standing, carrying, and lifting for an eight hour day. *Id.*

On November 22, 2004, Robert Holladay, M.D., examined Cooper at the request of Disability Determination Services. (Tr. 389-392).[6] During the examination, Cooper complained of neck pain, numbness, and tingling in her left arm. *Id.* However, her grip strengths were 5/5 bilaterally. *Id.* She also demonstrated 5/5 motor strength, with intact sensory function in both upper extremities. *Id.* There was no atrophy in either upper extremity. *Id.* She had a normal gait, and was able to squat, without weakness. *Id.* Holladay diagnosed cervical disc disease, left ulnar nerve neuritis, pacemaker, and heart disease. *Id.* He opined that Cooper was able to sit, stand, and walk, for at least eight hours in an eight hour workday. *Id.* She could use her hands for some simple grasps and light pushing and pulling. *Id.* She was limited with repetitive motion with her left arm, but not with her right. *Id.* She could frequently lift up to ten pounds, and occasionally lift 20-25 pounds. *Id.* She could ambulate without a cane, crutch or walker. *Id.* She was able to perform postural activities on an occasional basis. *Id.* However, she should

---

[6] Holladay also completed a medical source statement. *Id.*

limit exposure to vibration and experienced limited fingering ability because of left hand numbness in her fourth and fifth digits. *Id.*

C. R. Magness, M.D., examined plaintiff on, or about December 21, 2005. (Tr. 516-522). He indicated that walking 20 yards caused her dyspnea. *Id.* She experienced daily chest pain. *Id.* He indicated that she suffered from Hepatitis C, lumbar degenerative disc disease, situational anxiety, and depression. *Id.* Her straight leg raise was abnormal. *Id.* Her shoulder range of motion was reduced to 130 degrees from 150. *Id.* Her elbow flexion was reduced to 120 from 150. *Id.* She otherwise demonstrated a full range of motion. *Id.* She had loss of sensation in her little finger in the left upper extremity. *Id.* Her left grip strength was reduced by 50 percent. Nonetheless, she could hold a pen and write and pick up a coin. *Id.* She could walk without assistive devices. *Id.* Her ability to stand, lift, carry and handle was moderately limited. *Id.*

It is manifest that the ALJ attempted to craft his residual functional capacity assessment in accordance with the limitations identified by Dr. Holladay, and as *generally* supported by Dr. Magness. The ALJ's assessment largely tracks Holladay's medical source statement. There is no indication that Holladay's observation, set forth in his narrative report, that Cooper could use her hands for simple grasps, with light pushing and pulling, and no repetitive motion of her left arm, was inconsistent with the ALJ's finding that she was limited to frequent manipulative activities.[7] Moreover, to the extent that the ALJ may have erred by failing to include these specific limitations in his residual functional capacity assessment, any error was harmless. For example, regarding the manipulative requirements of Cooper's prior work, the VE testified that "feeling" was not required for the positions of admit clerk or medical secretary. (Tr. 770). Further, in response to a hypothetical from plaintiff's counsel that limited the claimant to only occasional

---

[7] The Dictionary of Occupation Titles ("DOT") defines "frequently" as an activity or condition that exists from 1/3 to 2/3 of the time. *See* DOT, Appx. C

reaching, handling, and fingering of the dominant hand, the VE opined that the jobs of admit clerk and medical secretary would still not be precluded. (Tr. 776-777).

In fact, even if Cooper had been unable to return to her past relevant work, VE testimony from an earlier hearing in this matter identified jobs that a claimant with Cooper's vocational background could perform at the sedentary exertional level, even with an inability to reach overhead, with occasional postural limitations, that included a sit/stand option, and with a moderate limitation in the ability to maintain attention and concentration for extended periods. (Tr. 735-739). Those two jobs, receptionist, DOT # 237.367-038 and appointment clerk, DOT # 237.367-010 exist in substantial numbers in the national and regional economy. *See* Tr. 735, 28.[8]

Plaintiff also emphasizes an April 13, 2004, To Whom It May Concern letter, penned by one of Cooper's treating physicians, Caroline Battles, M.D. (Tr. 344). She wrote that Cooper was unable to work because of Adam Stokes disease and because her pacemaker was problematic, with tangling and fraying wires. (Tr. 344). She stated that Cooper was unable to use her left side at all because of this problem. *Id*.

Plaintiff contends that the ALJ erred because not only did he not resolve this inconsistency in the evidence, he failed to even acknowledge Dr. Battles' letter. While an ALJ certainly is obliged to consider all of the record evidence,[9] he need not discuss every piece of evidence in the record. *Bordelon v. Shalala*, 1994 WL 684574 (5th Cir. Nov. 15, 1994) (unpubl.). Here, the ALJ acknowledged that he reviewed all of the evidence. (Tr. 20); *See Daniels v. Apfel*, 1999 WL 346976 (5th Cir. May 20, 1999) (unpubl.) (ALJ's failure to discuss expert opinion testimony did not constitute error because he stated that he considered the entire record).

---

[8] Also, the jobs require only occasional fingering. *See* DOT #s 237.367-038, 1991 WL 672192 and 237.367-010, 1991 WL 672185.

[9] *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

In any event, a physician's statement that a claimant is disabled or unable to work is accorded no special significance. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). Moreover, Dr. Battles' statement that Cooper was unable to use her left side at all is belied by Cooper's own activities and testimony. For instance, in February 2005, Cooper's limitations did not prevent her from lifting a heavy bucket of potatoes. (Tr. 464).[10] Also, when asked at the September 24, 2004, hearing why she could not return to her previous work plaintiff made no mention of an inability to use her left side. (Tr. 722-724). In sum, the ALJ's failure to address Dr. Battles' letter was harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

Plaintiff also argues that the ALJ committed reversible error because he failed to sufficiently justify his credibility determination. When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). Yet, the ALJ need not follow formalistic rules in his credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ credited the statements regarding the limiting effects of Cooper's impairments only to the extent that they were consistent with his residual functional capacity assessment. *See* Tr. 25. Because the ALJ relied upon the evaluations and limitations recognized by the medical professionals to ground his residual functional capacity assessment, he implicitly

---

[10] Although the heavy lifting aggravated her pacemaker wires. *Id*.

credited them over Cooper's self-professed limitations.  In so doing, the ALJ stressed evidence that Cooper engaged in drug-seeking behavior.  Tr. 26.[11]  The ALJ's analysis satisfied the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing);  *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion); *see also Berger v. Astrue*, 516 F.3d 539, 545-546 (7th Cir. 2008) (claimant's drug-seeking behavior may justify skeptical view of claimant's testimony).

## Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's decision is supported by substantial evidence and is free of legal error.[12]  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

---

[11] A November 5, 2003, entry in the medical record states that Cooper was a drug seeker. (Tr. 445).  Cooper threatened to sue, became disruptive, and left the office upset.  (Tr. 445).  On May 16, 2005, Cooper called to request a prescription for Xanax because her father-in-law had died.  (Tr. 464).  However, the pharmacy informed the doctor's office that she had received a prescription for Klonopin two days earlier.  *Id.*  Accordingly, the Xanax prescription was canceled.  *Id*.  The record also contains a prescription dated May 2, 2006, for 60 Lortabs, with a note that the physician said that it was not his signature.  (Tr. 676).

[12] Other than questioning the ALJ's residual functional capacity assessment, plaintiff does not raise any challenges specific to the ALJ's Step Four analysis.

11

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of July 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE